**STATE v RICHARDSON, et**

Common Pleas Court, Cuyahoga Co

Decided May 8, 1939

Frank T. Cullitan, county prosecutor, Neil McGill and John J. Mahon, assistants county prosecutor, of Cleveland, for the state of Ohio.

Martin A. McCormick, Thomas A. Burke, Jr., Augustus G. Parker, John D. Shackelford and J. Frank Azzarello, of Cleveland, for various defendants.

## OPINION

By HURD, J.

This case comes before this court at this time on the several motions of the individual defendants for a reduction in the amount of bail heretofore set by the presiding judge of the criminal branch of this court, at the next preceding term.

It is claimed by the movants that the varying amounts of bail so fixed are excessive, in violation of **Art. I, Sec. 9, of the Constitution of the State of Ohio** and the eighth amendment to the Constitution of the United States.

These defendants are named and included in one or more indictments returned by the grand jury at the January term of this court on the 26th day of April, 1939, said indictments being numbered consecutively 49,834. 49,835 and 49836, the defendants being charged therein jointly with others with a violation of §13384, GC which is the section describing and defining the penalty for what is designated as "blackmail" sometimes referred to as "extortion." The defendants are now confined in the county jail awaiting trial,

and claiming they are unable to make bail specifically because of the allegedly excessive amounts previously set by this court.

The various indictments while varying in certain particulars are similar in substance, alleging that said blackmail was committed in connection with an organized form of gambling known as "policy," sometimes referred to as the "numbers racket."

The names of the several defendants, together with the amounts of bail heretofore fixed are as follows:

| | |
|---|---|
| Charles Lavacco | $50,000 |
| Charles Lardomita | 50,000 |
| Joe Tempero | 50,000 |
| Albert Polizzi | 50,000 |
| William Richardson | 150,000 |
| Elsworth Jewell | 50,000 |
| Thomas Boyce | 50,000 |
| Herbert Oliver | 50,000 |

Extended hearings have been had consisting chiefly of the testimony of the defendants. The court has also had before it as part of the evidence the previous records of the several defendants and has reached certain conclusions based on the law and the evidence which are hereinafter set forth at some length. Before stating such conclusions it seems desirable to discuss briefly certain propositions of law deemed pertinent to the issues presented by the record.

The right to reasonable bail is fixed by the fundamental law of the land. The Constitutions, state and national, so provide. The Eighth Amendment to the United States Constitution recites "excessive bail shall not be required."

The **Constitution of the State of Ohio, Art. I, Sec. 9,** provides as follows:

"All persons shall be bailable by sufficient surety, except for a capital offense where the proof is evident or the presumption great. **Excessive bail** shall not be required."

The duty therefore devolves upon the court in all cases to grant reasonable bail. This is an inviolable right inuring to the defendant in any criminal case which may not be infringed or denied. The great difficulty arises as to what is reasonable and as to what may be excessive. Ultimately it seems that it resolves itself into a question of the exercise of sound discretion by the court in each individual case depending upon all of the facts and circumstances surrounding each individual case. The amount which would seem to be excessive under one set of facts and circumstances may not be so under others.

The latest expression of law on this subject of bail by any court of record is contained in the case of **In re Polizzi, 61 Oh Ap 354, 15 OO 232,** decided by the Court of Appeals of this district just three days ago, (May 5, 1939) in a **habeas corpus** proceeding originated by Albert Polizzi, one of the defendants herein for the purpose of procuring the fixing of what is termed reasonable bail by the Court of Appeals. The application for writ of habeas corpus was denied by the Court of Appeals on the ground that there was no record or showing that all remedies available in this Common Pleas Court had been exhausted, the court stating in substance that relief by habeas corpus will not be granted where a right of appeal exists.

Paragraph 3 of the syllabus reads as follows:

"3. The fixing by the trial court of a bond that is unreasonable and excessive is a violation of a constitutional right, as well as an abuse of discretion, and is therefore a final order from which a right of appeal will lie."

The language of the decision of the court, rendered by Montgomery, J., is so enlightening with respect to that matter that a quotation of an excerpt thereof must prove helpful in the consideration of the problem now presented. The excerpt follows: (Page 354)

"The petition avers that, on arraignment, the Common Pleas Court held the petitioner to bail in the sum of $50,000, which has not been furnished because it is excessive in amount, and in contravention of the Constitution of the state of Ohio and of the Eighth Amendment to the Constitution of the United States. The alleged purpose of the petition is to procure the fixing of what is termed reasonable bail.

"It is recited further that the applicant is a citizen of the State of Ohio, is vice president of a coal company, that when apprised of the indictment he was in the state of Florida and immediately returned by air, surrendering himself to the authorities of Cuyahoga county.

"This application is verified by one of the petitioner's counsel who simply stated 'that the facts stated and allegations contained in the foregoing are true as he verily believes'."

\* \* \* \*

"Except for the petition, verified as heretofore indicated, nothing was presented to this court in support thereof, except statements of counsel in open court. There was not presented to us any record of what happened in the trial court. There is nothing before us indicating what elements entered into the determination of the trial court in fixing this bond. There is nothing to indicate whether the trial court had before it facts sufficient to justify the commitment upon such a bail, and there is nothing before us to indicate that the trial court was affected by any improper consideration or misconception of the law.

"In Ferris' 'Extraordinary Legal Remedies,' 92, Section 70, under the title 'Excessive Bail' we note this statement:

"'In a proceeding by habeas corpus on the ground of excessive bail, the court will not interfere with the discretion exercised by the trial court unless it shall appear per se that the amount fixed is unreasonably great and clearly disproportionate to the offense involved, the determination of what is disproportionate to the offense depending not alone upon the amount of money which may have been lost to one party or secured to another by means of the offense, but depends rather upon the moral turpitude of the crime, the danger resulting to the public from the commission of such offense, and the punishment authorized by law therefor.'

"This seems reasonable and sound to us. Measured by it, what must be our conclusion? It certainly does not appear per se from the record before us that the amount fixed is unreasonably great and clearly disproportionate to the offense involved.

"With nothing before us further than is indicated, for us to make an order different from that made by the trial court would be simply a substitution of our judgment for its judgment and a substitution made without adequate data.

"It will be noted further that no application has been made to the trial court for a reduction of the bond. In fact, counsel admitted in open court that no formal application had been made. In this connection we call attention to the case of In re Martin, a decision of the District Court of Appeal of the First Appellate District of California as reported in 51 Cal. App. 706, 197 P. 365. In that case the writ of habeas corpus was denied on both of the two grounds for which it was sought, one being the alleged excessive bail. On that proposition the court stated:

"'Petitioner also contends that he is being held to answer in the Superior Court of the city and county of San Francisco on excessive bail. If this be true, it does not appear that he has made timely or any application to the court below for a reduction of the amount. Until he has done so and been denied any relief, we do not feel that this court is in a position to entertain an application for a writ of habeas corpus on that ground.'

"We might with propriety terminate our conclusion without proceeding further, for it seems clear and certain to us that, under the state of the record before us, the writ should be denied.

However, we have deemed it expedient to proceed further and discuss the propriety of granting such a writ even were the record different from the record presented.

"We are advised that there are numerous similar cases pending in the Common Pleas Court and that what is done by us in this action will indicate the further procedure of counsel for the other defendants."

The Court of Appeals then proceeds to discuss *in extenso* the principles of law enunciated in the syllabi above cited.

Now counsel in pursuance of the directions contained in the decision of the Court of Appeals have proceeded with this application in this court for reduction of the bond, placing upon us the responsibility of deciding the questions at issue after a full and complete hearing of which a record has been made, thereby enabling the defendants to proceed again to the Court of Appeals for review of our decision which by the holding of the Court of Appeals will constitute a final order, from which appeal may be taken.

Counsel have referred to a collection of cases contained in 53 A. L. R., commencing at page 395 and ending at page 407. The leading case set forth therein at length is Ex Parte Ed Malley, 53 A. L. R. 395, which was a case decided by the Supreme Court of Nevada, June 3, 1927. I deem it helpful for the purposes of this decision to refer to certain paragraphs of the syllabus thereof as follows:

"1. Mere inability to procure bail in a certain amount does not of itself make such amount excessive.

"2. A constitutional prohibition of excessive bail does not permit one charged with crime to say whether or not he can give bail in a certain amount or when the amount fixed is excessive.

"3. In a habeas corpus proceeding to reduce the bail of one under indictment for crime, he is presumed to be guilty of the offense charged.

"4. The purpose of bail is to assure the presence of one charged with crime at all times when demanded.

"6. Before a court will be justified in ordering reduction of bail in habeas corpus proceedings for that purpose, it must appear **per se** unreasonably great and disproportionate to the offense charged.

"7. One Hundred Thousand Dollars is not excessive to require as bail of one under seven indictments for embezzling $516,000 and other similar crimes, the punishment for which may include imprisonment for 100 years and the payment of fines aggregating $20,000."

The court in its opinion on page 398 says:

"It is said that the petitioner is unable to furnish bail in excess of $25,000. The ability of one charged with a crime to give the bail fixed is an element to be considered in an application of this character, but we have the bare statement of counsel to support the contention. There is no evidence before us to support it, and even if there was we would not deem it determinative of the matter for the real purpose of bail is to assure the presence of one charged at all times when demanded. As we have observed, the petitioner must be presumed in an application of this kind to be guilty as charged, and before we can be justified in ordering a reduction of bail it must appear **per se** unreasonably great and disproportionate to the offense charged."

Counsel have also cited the case of People of the State of Illinois, ex rel., James Fur Sammons v Bernard W. Snow, et al., a case decided by the Supreme Court of Illinois, October 16, 1930, and reported also at 340 Illinois, 464, 173 N. E., 8, and to a collection of cases under the annotation of Bail Factors Fixing Amount commencing on page 798 and ending on page 822, of 72 A. L. R.

The grouping of cases set forth both in 53 A. L. R., and 72 A. L. R., are very valuable for the purpose of throwing light upon this subject of bail, which

apparently has received very little attention in the reported cases in Ohio. Of particular interest is the case of People v Snow, supra, 72 A. L. R., 798, four paragraphs of the syllabus of which are as follows:

"1. Bail is not allowed or refused on account of the presumed guilt or innocence of the person accused, but the existence of a doubt as to his guilt and probability of his appearance are proper matters for consideration in determining the amount of bail.

"2. The character and criminal record of the person accused is a proper matter to be considered in fixing the amount of bail.

"3. The criminal activities and tendencies of a person applying for bail on a charge of vagrancy do not justify fixing the bail at an excessive amount for the purpose of keeping him in jail.

"4. One can not be required to give bail in a sufficient amount to answer charges on which he may be subject to arrest other than those upon which he is being held."

In this case the court held that bail in the sum of $50,000 was excessive on the charge of vagrancy. In deciding this case the court say: (Page 801)

"It is the duty of court to support and maintain the constitution, and if the judges who have taken an oath to support the constitution openly violate, it, how can they expect the courts to retain the confidence and respect of the people. A criminal may have forfeited his right to liberty but neither courts nor any other power have the right to deprive him of it except in accordance with the law of the land. Under the circumstances of this case in which the extreme penalty is imprisonment at hard labor for six months, or a fine of $100, the action of the court requiring $50,000 bail was unreasonable and violated the constitutional right of the petitioner to bail by sufficient sureties. The sum of $5,000 was sufficient amount of bail to be required of the petioner. He may be arrested under other charges against him and required to give bail to answer these charges, but he can not be required to give bail sufficient to answer those charges upon the charge for which he is now held."

**Ohio Jurisprudence, Vol. 5, §29, Page 31**, under the title "**Amount of Correct Bail**" is as follows:

"It is a general principle governing the allowance of bail that the amount thereof shall be reasonable. This principle finds expression in the Constitution of the United States and in the **Constitution of Ohio** in the familiar phrase that excessive bail shall not be required. In determining what is reasonable it has been said that an amount is reasonable which, in view of the nature of the offense, the penalty which the law attaches to it, and the probability of the establishment of guilt, seems no more than sufficient to secure the attendance of the accused."

Sec. 13435-2, GC, covering the subject of bail, provides as follows:

"The amount of the bond shall be fixed with consideration of the seriousness of the offense ▇▇▇▇▇▇▇ charged, the previous criminal record of the deceased and the probability or improbability of his appearance at the trial of the case."

It will be noted that the code section provides as the first consideration in fixing bail "the seriousness of the offense charged." The offense with which the defendants in this case are charged is defined by §13384, GC, which reads as follows:

"Blackmail: Whoever, with menaces, orally or by written or printed communication, sent or delivered by him, demands of another a chattel, money or valuable security, or accuses, or knowingly sends or delivers a written or printed communication, with or without a name, or with a letter, mark or designation, accusing or threatening to

accuse, another of a crime punishable by law, or of immoral conduct. which, if true, would tend to degrade and disgrace such person, or threatening to expose or publish any of his infirmities or failings, or to subject him to the ridicule or contempt of society, or to do any injury to the person or property of another with intent to extort or gain from him a chattel, money or valuable security or a pecuniary advantage, or with intent to compel him to do an act against his will, may be fined not more than one thousand dollars and shall be imprisoned in the penitentiary not less than one year nor more than five years."

We are of the opinion that the offense here charged is a most serious one, particularly when we view each indictment as a whole and consider the fact that there are numerous defendants joined in each indictment. As before stated, these indictments show that the offenses charged grow out of organized gambling in a certain business known as the "policy" or "numbers racket." These are crimes peculiar to large centers of population such as Cleveland, New York, Chicago and other large cities. An examination of reported cases does not disclose any other case with facts precisely the same as the facts contained in the one before us.

During the course of these hearings the prosecutor stated in open court that the state expected to show a conspiracy or joint enterprise on the part of these several defendants in connection with this so-called "policy racket". Inasmuch as conspiracy in and of itself is not made a crime in Ohio it can only be shown in connection with acts which are defined as crimes in Ohio. It is claimed in this case that the several defendants, by means of oral menaces and threats to do injury to the person and property of certain persons named in the indictment, extorted money from said persons for alleged protection.

As hereinbefore stated these indictments while varying in particulars are practically the identical in substance. Different amounts claimed to have been extorted are named in the indictments; for instance in one indictment $4,000.00 is alleged to have been extorted and that in return for this amount the defendants promised to give protection.

The prosecutor has further stated in open court during the course of these hearings, the names of certain persons, said to have been connected in one way or another with the "policy business", whose dead and mutilated bodies were found under certain circumstances indicating that they had met their deaths by foul play at the hands of persons unknown to the officers of the law. The prosecutor was careful to state that not one of these defendants were charged with complicity in connection with these untoward incidents, but apparently made the statement to show the evils attendant upon the policy racket as a business.

The promise of protection, if protection was promised, is a very serious charge, inasmuch as it imports either use of force by persons who consider themselves above the law or corruption of officers of the law.

In view of all of these facts we can not shut our eyes to the seriousness of the charge and the evils inherent in a situation such as is presented by the indictments. In this connection it should be stated that we are not in any wise attempting to pass upon the guilt or innocence of the defendants. That question will be presented to a jury under proper instructions from the court when they are placed on trial, at which time the defendants will be favored with the presumption of innocence and reasonable doubt accorded to them by law. It would appear to us, however, that in considering the seriousness of the offense charged we must assume, for the purpose of fixing bail, the truth of the allegations of the indictment.

The next consideration set forth in the statute is "the previous criminal record of the defendants" and the third proposition is the "probability or improbability of appearance at the trial of the case." Inasmuch as these two

propositions must be considered individually in connection with each individual charges against the defendants.

Considering first the case of Charles Lavacca; the record shows that this defendant has been arrested a number of times and has a previous criminal record. Upon the hearing the officers testified that when apprehended he had a travelling bag packed and ready for flight. In the travelling bag was found a loaded thirty-eight Colt revolver with ten or fifteen bullets in a box. The significance of this situation is apparent.

It appears to the court that in this case we have a combination of three factors named in the statute: A serious charge, a previous record and an apparent intention of flight, making his appearance at the trial improbable. In other words the probabilities, and that is all that the court can deal with, are not good for his report to the court for trial in the event of a low bill. In view of all the circumstances we reach the conclusion that the bail fixed in the sum of $50,000 is not excessive and the motion to reduce bail in his case is overruled.

Considering next the case of Charles Lardamito, the record shows that he was arrested in Cleveland, Ohio, January 12, 1938, on a charge of keeping rooms to record wagers. He was released on waiver January 13, 1938. The circumstances of his apprehension as adduced by the testimony indicate that he attempted to conceal himself, apparently for the purpose of flight. The testimony shows that he is a brother-in-law of Angelo Serria, one of the other defendants. He denied knowing all the other defendants. The court was not favorably impressed with his demeanor upon the witness stand and in view of the circumstances of his arrest, indicating at least a concealment or attempt at concealment, if not active flight, it would appear that the bail fixed in his case was not execessive and the motion for reduction of bail is overruled.

Considering now the case of William Richardson; he is charged in each one of the three indictments. The court was favorably impressed with his candor on the witness stand and believes that his testimony in the main was truthful. The record shows that he was arrested in Cleveland in 1931 on a charge of being a suspicious person and was discharged. He was convicted of perjury upon trial in this court, but this conviction was reversed by the Court of Appeals. Thereafter he was tried and found not guilty. During the course of his testimony he admitted being in the policy racket and operating a policy house. The testimony in his case further shows that he knew of the indictment, knew that the indictment had been returned and made no effort to avoid the arrest, so that we are prompted in his case to allow consideration on the second and third indictments, believing that the probabilities favor his appearance for trial. Considering the seriousness of the charge and the fact of his own admission that he is now operating a policy house and has been doing so for six or seven years, it is considered that the amount of bail on one indictment of $50,000 is not excessive, but the court considers in view of all of the circumstances of his case that a total bail of $150,000 is excessive and amounts practically to a denial of bail, so that the court reduces the bail, granting the motion in part and overruling it in part. The bail in two indictments is reduced to $5,000 each, making a total of $60,000 bail which we consider to be reasonable under all of the circumstances.

Considering now the case of the defendant Thomas Boyce, the record shows he was arrested in Cleveland, Ohio, July 28, 1932, charged with carrying concealed weapons. He pleaded guilty, was fined $5.00 and costs. Again in 1932 he was charged with assault and battery, was found guilty, fined costs and thirty days. On July 21, 1936, he was charged with distur-

bance and later discharged. On June 18th, 1938, he was charged with shooting to wound. November 30, 1938, ne pleaded guilty to assault, fined costs and sentenced to six months in the workhouse. On November 5, 1938, he was investigated for gambling and apparently released. He was arrested November 7, 1938, charged with assault and battery, discharged for want of prosecution. Also on November 21, 1938, he was charged with assault. The crimes charged against this defendant involved moral turpitude. In view of the seriousness of the charge, his previous record, the court is of the opinion that the bail of $50,000 fixed in his case was not excessive and therefore overrules the motion.

Considering the case of Herbert Oliver there is one entry against him on October 31, 1938. He was released on waiver. The court was ■ favorably impressed with his attitude and demeanor on the witness stand and believes under all the circumstances that the amount of bail, $50,000 fixed in his case, is excessive and grants the motion to reduce bail which is fixed at $25,000.

Considering the case of Elsworth Jewell, the record shows an arrest at Cleveland, Ohio, October 31, 1938, on the charge of being a suspicious person in connection with the numbers racket. He was released on waiver. The court was generally favorably impressed with the demeanor and candor of the witness upon the witness stand, and is of the opinion that the amount of bail under all the circumstances as fixed in his case is excessive, and therefore grants the motion to reduce bail in his case and fixes the same at $25,000.

Considering now the case of Albert Polizzi; the court was favorably impressed with his attitude on the witness stand. It appeared to the court that he was truthful in answer to the questions put to him. He was convicted of an offense in Federal Court, being charged with a violation of the prohibition act and served out his sentence. A number of arrests was shown in 1927 and 1928 being charged with being a suspicious person. He was released each time, however, without a plea of guilty or a finding of guilty. Also in January, 1938, he was charged with investigation and was released on a charge of keeping a room for wagers. One factor in his case with which the court is very favorably impressed is that the evidence shows that on the night of the day the indictments were returned he was in Miami, Florida, and finding out that he was wanted in Cleveland in connection with these indictments he secured passage on a plane and came by air from Florida to Washington and in order to reach Cleveland from Washington had to purchase an extra ticket of another passenger in order to arrive in Cleveland promptly. The evidence shows that upon his arrival he registered at a downtown hotel and after checking his baggage went immediately to the nearest policeman and told him that he was wanted on this charge. In other words upon learning of his indictment he literally flew to Cleveland to meet the charge and to give himself up for arrest. This augurs well for the probability of his presence when needed at the trial of the cause. The testimony also shows that he is vice-president of a coal company, and reputable witnesses have been presented who have testified to his good character particularly in later years, in connection with his business affairs and associations. Whatever may be the facts with respect to his guilt or innocence in connection with the charge under consideration great allowance should be made for his splendid conduct in hastening by the most rapid means of transportation possible to secure to give himself up and meet the charge. There is not the slightest doubt in our opinion so far as it lies within the power of the defendant, in view of his conduct thus far, that he will respond for trial. Therefore in view of all of the circumstances we believe that the motion for a reduction of ■ bail in his case should be granted and bail is reduced from $50,000 to $25,000.

Considering next the case of Joseph Tempero, the evidence adduced raises grave doubt as to whether or not this defendant was ever associated in any way with the defendants who are charged with conspiracy in this case. As above stated it is not the province of the court to pass upon ▮▮▮▮▮ the presumed guilt or innocence of the accused but the existence of a doubt as to his guilt and probability of his appearance are proper matter for consideration in determining the amount of bail. The prosecutor has indicated that in the case of this defendant there may be a mistake as to the identity of the person claimed to be guilty, and therefore the court is of the opinion that although the defendant was once convicted of a crime and served time that his conduct since that time negatives the idea that he has since been engaged in criminal activities. We are of the opinion that the reduction in bail in his case should be substantial and we are therefore reducing the bail from $50,000 to $1,000, which appears to us to be just under all the circumstances, and sufficient to insure his presence at the trial.

This completes a consideration of the individual cases presented. We have the satisfaction of knowing that each case has been considered upon its merits and has had the most careful consideration. Proper exceptions may be noted on behalf of each of the defendants.